UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AUDREY MARIE NORDGREN

Plaintiff,

v.

C. SCOTT MASSIE, and
A.P.A. DISSOLUTION CORPORATION,

Defendants.

CIVIL NO. 00-1193 (DSD/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on August 16, 2000 upon Defendants' Motion to Dismiss. [Docket No. 3]. Plaintiff appeared pro se; Karna A. Berg, Esq. appeared on behalf of Defendants. The matter was referred to the undersigned by Judge David S. Doty for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendants' Motion to Dismiss [Docket No. 3] be granted.

## FINDINGS OF FACT/REPORT

Defendants move to dismiss the Complaint in this action pursuant to Fed. R. Civ. P. 12(b)(6), on the basis that (1) Plaintiff's claims are barred by the applicable statute of limitations, and (2) the Complaint fails to state a claim upon which relief can be granted. We conclude that there are no genuine issues of material fact, and that Defendants are entitled to judgment as a matter of law. Therefore, we do not discuss Defendants' statute of limitations arguments.

FILED SEP 20 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

Plaintiff is a former employee of Durkee-Atwood Company. Durkee-Atwood has sold its assets, and its accounts are administered by Defendant A.P.A. Dissolution Corporation ("APA"). Plaintiff's Complaint alleges that APA fraudulently reduced her retirement benefits without her knowledge or consent.

According to the Complaint, Plaintiff had major back surgery in 1978, while employed at Durkee-Atwood. In June, 1983, Plaintiff was injured at work. Plaintiff went on temporary medical leave on June 1, 1984, and was laid off by Durkee-Atwood on June 29, 1984. Plaintiff had a serious car accident on September 16, 1984, and later applied for disability benefits from the Social Security Administration ("SSA"). The SSA found that Plaintiff was disabled, and therefore entitled to benefits.

According to the Complaint, APA has paid benefits to Plaintiff since April, 1985. Plaintiff alleges that her benefits were reduced in April of 1988, when APA started paying her "early retirement" rather than "disability" benefits. In October, 1998, Plaintiff learned that another former Durkee-Atwood employee, with less seniority, was receiving a larger pension payment each month than Plaintiff.[1] After discovering this information, Plaintiff came to believe that her benefits had been fraudulently reduced by APA. She alleges that she is entitled to disability benefits, and that APA changed her benefits from disability to early retirement fraudulently, and without her permission.

---

[1] The Complaint alleges that Plaintiff learned this information in 1988, rather than 1998. However, Plaintiff's Response to Karna Berg-Attorney [Docket No. 11], as well as Plaintiff's other submissions and statements, indicate that it was 1998. We are convinced that the Complaint contains a typographical error, and that Plaintiff learned of the difference in retirement benefits in 1998, rather than 1988.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

The Court of Appeals for the Eighth Circuit has provided this standard for the consideration of a Motion to Dismiss pursuant to Rule 12(b)(6):

> [A] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784, 787 (8th Cir.), cert. denied, 444 U.S. 899, 100 S. Ct. 208, 62 L.Ed.2d 135 (1979). We must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader. United States v. Mississippi, 380 U.S. 128, 143, 85 S. Ct. 808, 816, 13 L.Ed.2d 717 (1965); see also Bennett v. Berg, 685 F.2d 1053, 1058-59 (8th Cir. 1983); Bramlet v. Wilson, 495 F.2d 714, 717 (8th Cir. 1974).

Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, courts accept a plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences. Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).

The Court may not consider materials outside the pleadings on a motion to dismiss. Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992). However, it is well-established that the Court may review the entirety of documents attached to the Complaint. Morton, 793 F.2d at 187; see also Fed. R. Civ. P. 10(c)("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.")

Where a party attaches only a part of a document, or relies on a document but does not attach it, the authority of Rule 10(c) is less clear. Yet courts have had no difficulty in concluding that in considering a motion to dismiss, it is appropriate to review

an authentic document which forms the basis of plaintiff's claim, even if it is not attached to the Complaint. The parties are already on notice as to the materiality of the documents, and reviewing them does not convert the motion into a motion for summary judgment. "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Benefit Guar. Corp. v. White Consol. Indus. v. Sun Holding, L.P., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 114 S.Ct. 687 (1994).

In this case, Defendants submitted additional documents with their Motion to Dismiss which included not only documents referred to in the Complaint, but other documents relevant to the case and pages of transcribed deposition testimony. Plaintiff, in turn, submitted a number of additional documents to the Court in response to Defendants' Motion. With respect to these materials, Rule 12(b) provides:

> If, on a motion [under Rule 12(b)(6)], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The Eighth Circuit has held that the parties need not be given actual, affirmative notice that the Court intends to consider matters outside the Complaint. Madewell v. Downs, 68 F.3d 1030, 1048 (8th Cir. 1995)(citation omitted). Constructive notice is sufficient. Id. Failure to give formal notice is harmless when the non-moving party submits materials outside the pleadings in its opposition to the motion to dismiss. Id. In this case, since Plaintiff submitted materials outside the Complaint in her response to the Motion to Dismiss, we may treat the Motion as one seeking summary judgment without providing additional notice to the parties.

**B. Motion for Summary Judgment**

The standards for considering a Motion for Summary Judgment have their foundation in the provisions of Rule 56 of the Federal Rules of Civil Procedure, as interpreted in a trilogy of cases decided by the Supreme Court in 1986. Summary judgment is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e).

These principles have been explained and applied by the Court of Appeals for the Eighth Circuit in numerous cases. E.g., Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992); Fischer v. NWA, Inc., 883 F.2d 594, 598 (8th Cir. 1989); cert. denied, 495 U.S. 947 (1990); Health Care Equal. Comm. of the Iowa Chiropractic Soc'y. v. Iowa Medical Soc'y., 851 F.2d 1020, 1031-1032 (8th Cir. 1988).

## III. DEFENDANTS' MOTION

Accepting Plaintiff's factual allegations as true, Plaintiff has received monthly benefits payments from Durkee-Atwood in the amount of $168 from April 1985 through the present day. Plaintiff claims that she is owed additional amounts because Durkee-Atwood (and now APA) has paid her early retirement benefits, rather than the full disability benefits to which she is entitled under the Durkee-Atwood Company Employees Pension Plan (the "Plan").[2] Defendant argues that Plaintiff was never entitled to disability benefits under the Plan because Plaintiff did not become permanently unable to engage in any regular employment while she was actively employed by Durkee-Atwood, i.e., during the period from September 8, 1959 through June 29, 1984.

Section 4.6 of the Plan sets out the eligibility requirements for Permanent and Total Disability Benefits ("Disability Benefits"). The Plan defines permanent and total disability as follows:

> Permanent and total disability means a physical or mental condition as determined in accordance with this section, which will permanently prevent a Participant from engaging in any regular employment with the Employer or in any other regular gainful occupation for which he

---

[2] A copy of the Plan is attached as Exhibit 10 to the Affidavit of Binh T. Tuong. [Docket No. 5].

> is or may be suited by education, training or experience, except such employment as is found to be for the purposes of rehabilitation or not incompatible with the finding of total and permanent disability.

Section 4.6(b) of the Plan provides the eligibility requirements for Disability Benefits.

> A Participant with 15 years or more of Service who becomes permanently and totally disabled while actively employed by the Employer and prior to reaching the age of 65 years shall be eligible for a Disability Benefit as provided herein.

Plaintiff claims that she qualified for, and should have been receiving, Disability Benefits under the Plan. Defendant argues that Plaintiff was never eligible for Disability Benefits under the terms of the Plan because she did not become permanently and totally disabled prior to June 29, 1984, when her employment at Durkee-Atwood was terminated.

The Complaint asserts that Plaintiff is entitled to Disability Benefits under the Plan because of an injury she incurred while working at Durkee-Atwood in June of 1983. However, Plaintiff admits that she continued to work at Durkee-Atwood for eleven months after the accident, until she went on temporary medical leave on June 1, 1984. Plaintiff submitted a copy of a letter from Leonard A. Titrud, M.D. to support her contention that she became permanently and totally disabled while actively employed by Durkee-Atwood. The letter, dated June 1, 1984, states, in its entirety:

> RE: Audrey Nordgren
>
> To Whom It May Concern:
>
> Please be advised that this patient is totally disabled from her work until at least July 15, 1984, because of her back troubles.

[Docket No. 14, tab 3]. Dr. Titrud's letter does not support Plaintiff's assertion that she was permanently and totally disabled while employed by Durkee-Atwood. Under the terms of the Plan, Plaintiff could only have been eligible for Disability Benefits if she had an injury

which would permanently prevent her from engaging in any regular gainful employment. Dr. Titrud's letter states that Plaintiff is "totally disabled," but indicates that her disability may only last for a period of six weeks. In addition, Dr. Titrud opined that Plaintiff could not perform her work at Durkee-Atwood, but made no statement as to the possibility of Plaintiff engaging in other gainful employment.

The parties agree that Plaintiff has received Social Security disability benefits. However, the date from which the SSA found Plaintiff to be disabled is in dispute. The Complaint alleges that the SSA found Plaintiff disabled as of September 16, 1984. Defendants have submitted a copy of a form headed "Disability Determination and Transmittal," which states that Plaintiff was found disabled as of May 31, 1985. Tuong Aff., Ex. 8. We need not attempt to resolve this conflict, because both parties agree that Plaintiff was found to be disabled by the SSA as of some date after June 29, 1984, the date Plaintiff ceased to be employed by Durkee-Atwood. Therefore, under the terms of the Plan, Plaintiff could not have been eligible for Disability Benefits based upon the event which made her eligible for Social Security disability benefits, because she would not have been "actively employed" by Durkee-Atwood at the time that event occurred.

Plaintiff asserts that she never agreed to accept early retirement benefits under the Plan. However, Defendants have submitted documents dated March 10, 1988, signed by Plaintiff, which show that Plaintiff specifically chose to receive benefits before she reached full retirement age, resulting in a lower monthly payment. Tuong Aff., Ex. 9. Plaintiff does not dispute the authenticity of these documents, but claims that she does not remember reading or signing them.

Finally, in a deposition taken in connection with a different case, Plaintiff admitted that she was able to work during the period from July 1984 until her car accident on September 16, 1984. Tuong Aff., Ex. 5. The relevant exchange between Plaintiff and the examining attorney went as follows:

> Q: And since 1984 then have you received unemployment – any unemployment?
>
> A: I started receiving unemployment in about the middle of July of 1984.
>
> Q: And do you still receive that then?
>
> A: I did up until the time I had my car accident.
>
> Q: Then you were taken off unemployment?
>
> A: Yes. Because you have to be able to work.
>
> Q: So did you go down one week and filled out the card and they said, well, I'm sorry, you can't receive any more because –
>
> A: I didn't go down there. I let them know by telephone.
>
> Q: You phoned in and just asked if you should come down again or just roughly tell me how that happened?
>
> A: I knew the rules and I know you have to be physically able to work. And I was completely unable to work. . . .

Deposition of Audrey Marie Nordgren, taken on July 29, 1986, p. 40, l. 5-20.

Plaintiff's sworn testimony reveals that she did not consider herself unable to work until her car accident on September 16, 1984. She applied for unemployment compensation after being laid off in June 1984, knowing that a prerequisite to receiving such compensation was that she be physically able to work. This amounts to an admission by Plaintiff that she was not permanently unable to engage in gainful employment while

she was still employed by Durkee-Atwood.

In order to receive Disability Benefits under the Plan, Plaintiff would have had to become permanently and totally disabled while actively employed by Durkee-Atwood. The determination of the SSA suggests that Plaintiff did not become permanently disabled until some time after her employment with Durkee-Atwood was terminated. Dr. Titrud's letter likewise does not support Plaintiff's claim that she became permanently unable to engage in any gainful employment while working at Durkee-Atwood, but rather suggests only that Plaintiff was unable to perform her specific job for a limited period of time.

Plaintiff's claim of permanent disability as a result of the June 1983 workplace accident is also belied by the fact that she continued to work at Durkee-Atwood for almost a year following the accident. Plaintiff admitted during a deposition that she was physically able to work until she had a car accident in September of 1984, over two months after her employment at Durkee-Atwood ended. In addition, Plaintiff signed documents opting to receive early retirement benefits, which she has been receiving for more than ten years.

Plaintiff was not permanently and totally disabled while she was actively employed by Durkee-Atwood. Therefore, Plaintiff did not qualify for Disability Benefits under the Plan, and she is not entitled to receive those benefits now. There are no genuine issues of material fact, and Defendants are entitled to judgement as a matter of law.

Defendants assert alternative bases for dismissal in their Motion. Since we have concluded that summary judgment should be granted in favor of Defendants under Rule 56, we will not consider Defendants' other arguments.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Defendants' Motion [Docket No. 3] be granted, and that summary judgment be entered in favor of Defendants.

Dated: September 19, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **October 3, 2000** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **October 3, 2000**.